STOWERS, Chief Justice, concurring.
I concur in the result reached by the court, but only under the compulsion of our precedent in Tommy's Elbow Room, Inc. v. Kavorkian ( Kavorkian III ),[1] Croft ex rel. Croft v. Wicker ,[2] Mattingly v. Sheldon Jackson College ,[3] and especially Beck v. State, Department of Transportation & Public Facilities .[4] While the court concludes here that a "bystander's claim for negligent infliction of emotional distress remains as it was explained in Kavorkian III , Croft , Mattingly , and Beck ,"[5] I worry this case represents another expansion of liability-particularly in the medical malpractice context where the legislature has acted to constrain tort liability.[6]
In our formative bystander negligent infliction of emotional distress (NIED) cases, the plaintiffs observed a relative's injuries contemporaneously with or closely on the heels of learning of the events that caused them. In contrast, Doan was in the hospital waiting room when much of the alleged medical malpractice occurred, and upon seeing her daughter's body, she was not contemporaneously aware of the "nature" of Tristana's *716 injuries, i.e., that Tristana's death was allegedly caused by the conduct of her doctors, rather than by her underlying condition.
Doan's case is similar to Beck . As the court explains above, in Beck a mother was at home when she learned that her daughter had been involved in an automobile accident six miles away.[7] The mother immediately drove to the scene, but rescue workers prevented her "from approaching the wrecked vehicle which still contained her injured daughter."[8] The mother then drove to the hospital where she "saw her injured daughter for the first time."[9] Among other claims the mother sued the State for NIED. The State argued that we should limit NIED claims to cases where the plaintiff was actually present at the scene of the injury-producing event and was aware that it caused the injury to the victim.[10] We explained: "The State urges us to restrict NIED claims by applying the Dillon factors as strict requirements rather than guidelines, the approach taken by the California Supreme Court in Thing v. La Chusa ."[11] But we expressly declined to adopt the California Supreme Court's limitation on NIED liability, explaining "that both justice and the policy favoring reasonable limitations on liability [could] be served with a less restrictive approach."[12] We held "that one who is thrust, either voluntarily or involuntarily, into such dramatic events and who makes a sudden sensory observation of the traumatic injuries of a close relative in the immediate aftermath of the event which produced them is no less entitled to assert a claim for his or her emotional injuries than one who actually witnessed the event."[13]
In my view this court missed the opportunity to place sensible limits on NIED claims in Beck . The rule articulated by the California Supreme Court in Thing was a reasonable and necessary approach to bystander NIED claims:
[A] plaintiff may recover damages for emotional distress caused by observing the negligently inflicted injury of a third person if, but only if , said plaintiff: (1) is closely related to the injury victim; (2) is present at the scene of the injury producing event at the time it occurs and is then aware that it is causing injury to the victim ; and (3) as a result suffers serious emotional distress-a reaction beyond that which would be anticipated in a disinterested witness and which is not an abnormal response to the circumstances.[14 ]
The Thing court rightly recognized that "[l]ittle consideration [was] given in post- Dillon decisions to the importance of avoiding the limitless exposure to liability that the pure foreseeability test of 'duty' would create."[15] The court retreated from its unwieldy precedent in Dillon , which had created a progressively expansive class of possible plaintiffs for bystander NIED claims.[16] As the court concluded, "the societal benefits of certainty in the law, as well as traditional concepts of tort law, dictate limitation of bystander recovery of damages for emotional distress."[17]
Because this court purposefully and explicitly declined to join California in tightening the law for bystander NIED claims in Beck , respecting the doctrine of stare decisis I am compelled to follow the law as this court expressed it. I therefore concur in the opinion of the court. But I am concerned that our case law is expanding the boundaries of NIED into an ever-widening circle of liability; at some point, almost any conceivable emotional injury following injury to a closely *717 related relative will be foreseeable, and if foreseeable, then actionable.

48 Cal.3d 644, 257 Cal.Rptr. 865, 771 P.2d 814, 829-30 (1989).

837 P.2d 105, 110 (Alaska 1992).

Id. at 109.

Id.

257 Cal.Rptr. 865, 771 P.2d at 815.

Id.

Id.

Id.

Id.

28 Cal.4th 910, 123 Cal.Rptr.2d 465, 51 P.3d 324, 330 (2002).

Id. 123 Cal.Rptr.2d 465, 51 P.3d at 325-26.

Id. 123 Cal.Rptr.2d 465, 51 P.3d at 331.

Id. 123 Cal.Rptr.2d 465, 51 P.3d at 329.

Thing , 257 Cal.Rptr. 865, 771 P.2d at 829-30 (emphasis added) (footnotes omitted).

Id. 257 Cal.Rptr. 865, 771 P.2d at 821 (referencing Dillon , 69 Cal.Rptr. 72, 441 P.2d 912 ).

Id. 257 Cal.Rptr. 865, 771 P.2d at 828-30.

Id. 257 Cal.Rptr. 865, 771 P.2d at 815.